OPINION OF THE COURT
Gabrielli, J.
The Commissioner of the State Department of Social Services appeals directly to this court, pursuant to CPLR 5601 (subd [b], par 2), from a judgment of the Supreme Court, Monroe County (Smith, J.), declaring section 15 of chapter 76 of the Laws of 1976 (now a part of Social Services Law, § 158), to be unconstitutional, and enjoining its implementation and enforcement. We affirm the judgment appealed from, on the ground that the challenged section constitutes a substantive violation of section 1 of article XVII of the New York State Constitution.
New York residents under the age of 21 who are in need of public assistance normally receive aid through either the Federally subsidized Aid to Families with Dependent Children Program (AFDC) (Social Services Law, §§ 343-362), or the State’s broad Home Relief Program (Social Services Law, *5 §§ 157-166). The determination of which program is applicable in a particular instance is based on whether the needy individual under 21 is residing with either a parent or a legally responsible relative. If he is residing with such a person, he is eligible for AFDC, but not home relief, whereas if he is not residing with such a person, entitlement to benefits stems from the home relief program and not AFDC.
Section 15 of chapter 76 of the Laws of 1976 amended subdivision (a) of section 158 of the Social Services Law, the section which determines eligibility for home relief. As amended, the statute provides that home relief is not to be provided to a person under the age of 21 who does not live with a parent or legally responsible relative, unless and until the applicant commences a support proceeding against any such parent or relative and an order of disposition is obtained in that support proceeding.* Prior to the enactment of section 15, no such limitation was imposed upon a needy young person’s right to public assistance. Rather, the public welfare authorities were subrogated to whatever right the recipient might have to support from a parent or responsible relative (see Social Services Law, § 101 et seq.; Family Ct Act, § 415). Under that system, a person under the age of 21, whether or not residing with a parent or responsible relative, was entitled to public assistance upon proof of need, regardless of the existence of a parent or responsible relative, and it was left to the State to seek to recoup its welfare expenditures via a support proceeding against any such parent or relative. This is the method which was used in both AFDC and home relief cases prior to adoption of the section under attack and it is of interest to note that it is the method still used in AFDC cases.
Plaintiffs in this action are three indivduals under the age of 21 who are not living with a parent or responsible relative, and are thus eligible only for home relief, not for AFDC. They are concededly needy and, prior to the effective date of section *6 15, they would have been and were entitled to home relief, having met all requisite criteria.
One of the plaintiffs was 18 years old at the time this action was commenced. His father had abandoned his mother before plantiffs birth, and his whereabouts are unknown. Until 1976, the son had lived with his mother, and was receiving an AFDC grant. His mother was then committed to a State hospital due to mental illness and, as a result, the son became ineligible for AFDC. Although he ultimately obtained a final disposition in a support proceeding against his mother in an attempt to satisfy section 15, he was denied home relief on the ground that he had not obtained a final disposition in a support proceeding against his missing father.
A second plaintiff was 19 years old, pregnant, and living alone when this action was commenced. Her mother was deceased, and her father was living in Alabama. Her sole source of income was home relief. On October 12, 1976, she was notified that all public assistance would be terminated in eight days unless she could produce within that time a court order of disposition in a support proceeding against her father.
A third plaintiff was an 18 year old, unemployed, high school graduate when this action was commenced. Prior to August, 1976 she lived with her mother and five siblings on an AFDC grant. She then left home due to family difficulties, and ultimately applied for home relief. Her application was denied because of her failure to obtain an order of disposition in a support proceeding against her father, who had disappeared some 10 years ago.
Standing uncontroverted is the accepted fact and reality that in each of these cases in order to obtain the required "disposition”, it would take from several weeks to several months, during which time no public assistance would be available to these needy young people. Indeed, in the third plaintiffs case, Family Court officials originally refused to accept her support petition because she was unable to provide an address for her missing father. In the second mentioned case, Family Court officials estimated that since her father was in Alabama and any support proceeding would have to be conducted in accordance with the Uniform Support of Dependents Law (Domestic Relations Law, art 3-A), it would take a minimum of 10 weeks to obtain a disposition. In certain areas of the State even greater delays are normal, and, in fact, it has been estimated that in New York City it will often take *7 from 10 to 12 months to obtain a "disposition” in such a support proceeding. Under the challenged statute, the plaintiffs and others in similar situations are, of course, denied any public assistance during this period, although they meet all criteria for measuring need, solely on the basis of their failure to obtain a disposition. Since they do meet the need criteria, and are thus a fortiori unable to support themselves without public aid, one must wonder how they are to survive this period of waiting for an overcrowded Family Court system to process their often quite futile support petitions.
 In New York State, the provision for assistance to the needy is not a matter of legislative grace; rather, it is specifically mandated by our Constitution. Section 1 of article XVII of the New York State Constitution declares: "The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine”. This provision was adopted in 1938, in the aftermath of the great depression, and was intended to serve two functions: First, it was felt to be necessary to sustain from constitutional attack the social welfare programs first created by the State during that period (cf. People v Westchester County Nat. Bank, 231 NY 465); and, second, it was intended as an expression of the existence of a positive duty upon the State to aid the needy.
The legislative history of the Constitutional Convention of 1938 is indicative of a clear intent that State aid to the needy was deemed to be a fundamental part of the social contract. For example, the report of the Committee on Public Welfare, the group which drafted what became section 1 of article XVII of our Constitution, specifically states that one purpose of the amendment was to "recognize the responsibility of the State for the aid, care and support of persons in need” (Revised Record of the Constitutional Convention of the State of New York, vol II, p 1084 [1938]). Even more explicit are the comments by Edward F. Corsi, Chairman of the Committe on Social Welfare, in moving the adoption of the provision by the convention:
"We have made provision for the relief of the needy. Convinced that the care of the unemployed and their dependents is in our modern industrial society a permanent problem of major importance affecting the whole of society, we have recommended that:
*8 " 'The aid, care and support of the needy are public concerns and shall be provided by the State and by such of its subdivisions and in such manner and by such means as the Legislature may from time to time determine.’
"Here are words which set forth a definite policy of government, a concrete social obligation which no court may ever misread. By this section, the committee hopes to achive two purposes: First: to remove from the area of constitutional doubt the responsibility of the State to those who must look to society for the bare necessities of life; and, secondly, to set down explicitly in our basic law a much needed definition of the relationship of the people to their government.
"While the obligation expressed in this recommendation is mandatory, in that the Legislature shall provide for the aid, care and support of persons in need, the manner and the means by which it shall do so are discretionary.
"The Legislature may continue the system of relief now in operation. It may preserve the present plan of reimbursement to the localities. It may devise new ways of dealing with the problem. Its hands are untied. What it may not do is to shirk its responsibility which, in the opinion of the committee, is as fundamental as any responsibility of government” (Revised Record of the Constitutional Convention, vol III, p 2126 [1938]).
In view of this legislative history, as well as the mandatory language of the provision itself, it is clear that section 1 of article XVII imposes upon the State an affirmative duty to aid the needy (see, e.g., Matter of Colon v Lavine, 48 AD2d 656; Fuller v Nassau County Dept, of Social Servs., 77 Misc 2d 677, 683-684; Matter of Szanto v Dumpson, 77 Misc 2d 392, 396; Matter of Hudson v Sipprell, 76 Misc 2d 684, 687; see, also, Matter of Jones v Berman, 37 NY2d 42, 54-55). Although our Constitution provides the Legislature with discretion in determining the means by which this objective is to be effectuated, in determining the amount of aid, and in classifying recipients and defining the term "needy”, it unequivocally prevents the Legislature from simply refusing to aid those whom it has classified as needy. Such a definite constitutional mandate cannot be ignored or easily evaded in either its letter or its spirit (see Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y., 40 NY2d 731, 737, 739; Sgaglione v *9 Levitt, 37 NY2d 507; Matter of Sloat v Board of Examiners, 274 NY 367, 370).
We find that section 15 of chapter 76 of the Laws of 1976 is unconstitutional in that it contravenes the letter and spirit of section 1 of article XVII of the Constitution. The effect of the questioned statute is plain: it would effectively deny public assistance to persons under the age of 21 who are concededly needy, often through no fault of their own, who meet all the criteria developed by the Legislature for determining need, solely on the ground that they have not obtained a final disposition in a support proceeding. Certainly, the statute is in furtherance of a valid State objective, for it is intended to prevent unnecessary welfare expenditures by placing the burden of supporting persons under 21 upon their legally resposible relatives. This valid purpose, however, cannot be achieved by methods which ignore the realities of the needy’s plight and the State’s affirmative obligation to aid all its needy.
In Matter of Barie v Lavine (40 NY2d 565), we were presented with a somewhat similar challenge to a social services regulation providing for the temporary suspension of recipients who unjustifiably refuse to accept employment. We summarily dismissed the constitutional arguments proffered in Barie, stating: "The Legislature may in its discretion deny aid to employable persons who may properly be deemed not to be needy when they have wrongfully refused an opportunity for employment” (id., at p 570). In that case we were concerned with a reasonable legislative determination that such individuals were not needy. The present case, in contradistinction, presents a very different question: May the Legialature deny all aid to certain individuals who are admittedly needy, solely on the basis of criteria having nothing to do with need? Today, we hold that it may not. As the chairman of the Constitutional Convention’s Committee on Social Welfare indicated, although the Legislature is given great discretion in this area, it cannot simply "shirk its responsibility which * * * is as fundamental as any responsibility of government” (Revised Record of the Constitutional Convention, vol III, p 2126 [1938]).
In view of our decision, we do not reach the plaintiffs’ equal protection attacks on the statute. The judgment appealed from should be affirmed.
*10 Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Judgment affirmed, with costs.

 As amended, subdivision (a) of section 158 of the Social Services Law provides in pertinent part that: “Any person unable to provide for himself, or who is unable to secure support from a legally responsible relative, who is not receiving needed assistance or care under other provisions of this chapter, or from other sources, shall be eligible for home relief; provided, however that no person under the age of twenty-one years except a married person living with their spouse, living apart from a legally responsible relative shall be eligible for home relief unless a proceeding has been brought by or on behalf of such person to compel such legally responsible relative to provide for or contribute to such person’s support and until an order of disposition has been entered in such proceeding.”