■ WILLIAM PALMER et al., Respondents, v MARIO M. CUOMO, as Governor of the State of New York, et al., Appellants.— Order, Supreme Court, New York County (Elliot J. Wilk, J.), entered August 30, 1985, which granted plaintiffs-respondents' motion for a preliminary injunction, pendente lite, enjoining defendants-appellants from discharging plaintiffs-respondents Leslie, Contardi, and Dawkins from foster care until (1) a

discharge plan has been adopted for plaintiffs-respondents pursuant to Social Services Law and related regulations; (2) plaintiffs-respondents are given reasonable preparation for such discharge, including career counseling, training in a marketable skill or trade, and skills for independent living; and, (3) plaintiffs-respondents are given reasonable notice of their impending discharge; and directing defendants-appellants to provide supervision of each plaintiff-respondent until he reaches 21 years of age, ensuring, at a minimum, that plaintiffs-respondents' basic needs are met, including appropriate housing outside the New York City municipal shelter system, is modified, on the law, on the facts, and in the exercise of discretion, to the extent only of enjoining the City of New York defendants-appellants to discharge their current foster care obligations to plaintiffs-respondents, and directing the State of New York defendants-appellants to promulgate, within a reasonable time, regulations defining the statutory obligation to supervise, and otherwise affirmed, without costs.

Plaintiffs-respondents are 10 foster care children between the ages of 17 and 21 years—seven of whom have been discharged and three who are soon to be discharged from their foster care placements to "independent living." (18 NYCRR 430.12 [f].) They commenced the underlying action for declaratory, injunctive and monetary relief, claiming that both the City and State of New York had (1) breached a statutory duty to prepare them for independent living outside the foster care system, and (2) failed to "supervise" those plaintiffs-respondents already discharged. The discharged plaintiffs-respondents contend that defendants-appellants not only failed to prepare them for independent living but never contacted them following their discharge. As such, they claim they were homeless and forced to seek shelter in tenement buildings, subways and public parks.

NY Constitution, article XVII, § 1 places an affirmative duty on the State to provide aid to the needy. *(See, Tucker v Toia,* 43 NY2d 1, 8; *see also, Matter of Lee v Smith,* 43 NY2d 453, 460.) The State, therefrom, has a *parens patriae* burden of meeting that duty for children requiring foster care. *(See, Matter of O'Rourke v Kirby,* 54 NY2d 8, 13-14; *see also, People ex rel. Ninesling v Nassau County Dept. of Social Servs.,* 46 NY2d 382, 389.)

The New York State foster care program is the responsibility of the State Department of Social Services, which, under defendant-appellant Commissioner Perales, maintains the local districts' compliance with their statutory and regulatory

obligations. *(See,* Social Services Law §§ 11, 17, 20.) New York City is a social services district pursuant to Social Services Law § 56. Through the Commissioner of the New York City Human Resources Administration (HRA), defendant-appellant Commissioner Gross, the city is "responsible for the welfare of children who are in need of public assistance and care, support and protection" residing in New York City. (Social Services Law § 395.) The HRA Commissioner has the duty to "[s]upervise children who have been cared for away from their families until such children become twenty-one years of age or until they are discharged to their own parents * * * guardians, or adopted." (Social Services Law § 398 [6] [h].)

Seven of the instant 10 foster children were discharged, prior to reaching age 21, without adequate preparation for independent living and, in some instances, were not given an opportunity to contest the discharge itself. They state in affidavits that these inadequacies led to their destitution. They also contend that they were not contacted nor offered assistance or supervision following their discharge from foster care. The three plaintiff foster children who are awaiting discharge claim that they have not received adequate preparation for independent living.

This action was commenced by the 10 children to, *inter alia,* enjoin the city and State, pendente lite, to proffer adequate predischarge preparatory plans and to properly supervise those plaintiffs-respondents already discharged to independent living. Special Term found sufficient grounds to grant the preliminary injunction to enjoin defendants-appellants from discharging Leslie, Contardi and Dawkins, the three predischarge children, to independent living until they had received adequate preparation for it. Special Term further directed defendants-appellants to provide supervision to the plaintiffs-respondents until they reached age 21, ensuring that their basic needs of food, clothing and housing, outside of the New York City municipal shelter system, are met.

We modify only to the extent of enjoining the city to perform its predischarge preparatory obligations and its post-discharge supervisory responsibilities, and directing the State to promulgate regulations governing the statutory obligation to supervise.

The City of New York is required to provide training in independent living skills prior to discharging the child. These include apartment hunting, budgeting, shopping and cooking. (18 NYCRR 430.12 [f] [2] [i].) The city also has the responsibil-

ity to "ensure training for the child directed toward career objectives, such as training in a marketable skill or trade, counseling around career choices, and assistance in locating or enrolling in appropriate programs * * * until the child is discharged." (18 NYCRR 430.12 [f] [2] [i].) There is nothing in the record to indicate that the seven foster children who were discharged prior to age 21 received training and assistance as required by the regulations.

The city contends that it counseled one discharged plaintiff-respondent for six months and another for one year following their discharge from foster care. It concedes, however, that it did not provide *adequate* supervision to the discharged plaintiffs-respondents. Furthermore, it is undisputed that appellants never contacted four of the plaintiffs-respondents following their discharge. The failure of the city to maintain a minimum level of supervision of the discharged plaintiffs-respondents was in contravention of Social Services Law § 398 (6) (h).

Although the city contends that it has established a trial discharge period of three months which may be extended to six months, there is no system for monitoring children at any time after the six-month period has expired. The city argues that "supervise" under Social Services Law § 398 (6) (h) means caseworker contacts, but concedes that no regulations or guidelines exist which require caseworker contacts up until the discharged child is 21 years of age. The city appellants claim they are in the process of formulating a program to provide for aftercare "supervision" until the child reaches age 21. They also call attention to the existence of a pilot program designed to supervise children discharged to independent living anytime between ages 18 and 21 years.

These proposed programs may be a step toward resolving the problem of supervision of discharged foster children prior to their reaching age 21; however, the supervisory mandate of Social Services Law § 398 (6) (h) will be best carried out through regulations which clearly define the requirement of "supervision". Concur—Kupferman, J. P., Sandler and Fein, JJ.

Carro and Rosenberger, JJ., dissent in part and would affirm for the reasons stated by Wilk, J., at Special Term.