OPINION OF THE COURT
Raymond E. Cornelius, J.
This is a combined proceeding, pursuant to CPLR article 78, and declaratory judgment action, under CPLR 3001. The litigation has been commenced on behalf of the petitioners, including the petitioner-intervenor, and also on behalf of a proposed class of public assistance applicants and recipients of Home Relief, who will have resided in the State of New York for less than six months. In this latter regard, a request has been made for class certification.
Initially, the proceeding had been returnable before the court on June 7, 1993. However, prior thereto, Joyce Aldridge made an application for intervention and a motion for a temporary injunction.[1] Motions were thereafter rescheduled to be heard on August 16, 1993, but upon the consent of all parties, were adjourned until September 27, 1993. The parties then consented to convert the application from one for preliminary relief to a motion for permanent injunction, together with a request for class certification. Oral argument on this *274 motion was heard on October 25, 1993, and because only issues of law are involved, the following constitutes the court’s decision.
There are two major public assistance programs in the State of New York. Aid to Families with Dependent Children (AFDC) is funded by the Federal, State, and local governments, and is intended to provide financial assistance to children, or parents or relatives, who may be responsible for the care of a child and also in need of assistance. (Social Services Law § 349.) The other program is known as Home Relief (HR), which is intended for those individuals unable to maintain themselves and is funded by the State of New York and local counties. (See, Social Services Law §§ 157-165.)
Before July 1, 1992, the amount of public assistance for an HR recipient was not dependent, in any way, upon length of residency in this State. However, pursuant to chapter 41 of the Laws of 1992, and as part of general measures to reduce the cost of public and medical assistance, the Social Services Law was amended to provide, in section 158 (f), as follows: "Notwithstanding any other provision of law, the home relief payment for any person who applied for home relief benefits within six months of establishing residency in the state, shall, for the first six months after establishing residency, be limited to the greater of: (i) eighty percent of the home relief grant set forth in section one hundred thirty-one-a of this chapter, or (ii) the standard payment, if any, that would apply to the applicant under the laws of the state, if any, in which he or she resided immediately prior to establishing residency in this state”.[2] Thus, the Legislature enacted what may be described as a durational residency requirement, resulting in reduced benefits for those individuals who have been residents for six months or less and have come from States without comparable public assistance benefits.[3]
All four petitioners had formerly lived in States having *275 lower Home Relief benefits than the State of New York. At some point after moving to this State, each had submitted a public assistance application which, as with all applicants, was approved on the 45th day thereafter. However, they received lower benefits for the first six months, as compared to longer term residents, and, with the exception of Joyce Aldridge, were not apprised of this fact at the time of approval.
The petitioner, George Aumick, moved to this State from the State of New Jersey on July 1, 1992, allegedly in order to secure work in Cayuga County and to be near family members. After participation in several alcohol abuse treatment programs, he made application for public assistance to the Ontario County Department of Social Services and was granted Home Relief as of November 5, 1992.[4] The petitioner, Beverly Powell, was also a recipient of Home Relief from the County of Ontario. She had been employed, for a number of years, as a migrant farm worker, and in the fall of 1992, returned from the State of Florida in order to secure employment. However, this did not materialize as a result of an injury to this petitioner’s companion, and her subsequent application for public assistance was accepted as of October 11, 1992.
The remaining two petitioners had both been born in the State of New York, and after having located elsewhere for different reasons, returned to this State and thereafter sought public assistance. The petitioner, Frank McDivitt, purportedly returned to this State, in part, to resolve his grandfather’s estate, after an injury required him to leave his job in the State of Utah. His application for public assistance was approved, effective July 14, 1992, by the Department of Social Services in Cattaraugus County, where the petitioner was then living and also had extended family. The petitionerintervenor, Joyce Aldridge, had most recently lived in the State of North Carolina with her husband. She contends that her husband had been emotionally abusive toward her, and subsequent to the execution of a written separation agreement, returned to the State of New York in order to be near her family, including brothers, sisters, and a child. This peti *276 tioner’s application for public assistance was approved and became effective as of April 23, 1993. It should be noted that Ms. Aldridge was the only petitioner who, as of the time of preparation of the motion for preliminary injunction, would not have been eligible for an increased grant, under Home Relief, because of the expiration of the six-month period. However, at the time of the argument of the motion for permanent injunction, on October 25, 1993, she also would presumably have been receiving an increased award, assuming that she continued to be otherwise eligible for the Home Relief program.
Perhaps unlike other jurisdictions, which may require public assistance by legislation, New York has addressed this subject in the State Constitution, which, in relevant part, provides as follows: "The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine.” (NY Const, art XVII, § 1.) In the decision of Tucker v Toia (43 NY2d 1 [1977]), the Hon. Domenick L. Gabrielli traced the history of this constitutional provision, and based thereon, as well as the mandatory language of the provision, concluded that New York Constitution, article XVII, § 1 imposed an affirmative duty to aid the needy. The Court then ruled as follows: "Although our Constitution provides the Legislature with discretion in determining the means by which this objective is to be effectuated, in determining the amount of aid, and in classifying recipients and defining the term 'needy’, it unequivocally prevents the Legislature from simply refusing to aid those whom it has classified as needy.” (Tucker v Toia, supra, at 8.) This case also involved an amendment to Social Services Law § 158, which made Home Relief to persons under the age of 21, who did not live with either a parent or other legally responsible relative, contingent upon the commencement of a support proceeding against such parent or relative, and the obtaining of an order of disposition in such proceeding. This amendment was held to violate New York Constitution, article XVII, § 1 because the State Legislature had denied all aid to certain individuals, who otherwise qualified as needy, based solely on criteria unrelated to need.
In another decision, also involving Social Services Law § 158, the Court struck down, as unconstitutional, an amendment which provided that a person receiving Federal supplemental security income (SSI) payments and/or additional *277 State payments would not be eligible for Home Relief. (Matter of Lee v Smith, 43 NY2d 453 [1977].) As the Court noted, this resulted, in many cases, in the aged, disabled and blind being entitled to less public assistance than other needy persons. Thus, the petitioner, who was blind in one eye, was denied Home Relief solely because of her status as an SSI recipient. The Court acknowledged that the Legislature was authorized to create categories of public assistance and to determine the needs of individuals within those categories, but ruled that "any classification which denies to one class of needy persons public assistance which is available to all others, cannot be justified unless it is rationally related to a legitimate State interest” (at 460). This conclusion was based upon the equal protection requirements of both New York Constitution, article I, § 11 and United States Constitution Fifth and Fourteenth Amendments. Although the Court acknowledged that the State may have a legitimate interest in reducing administrative costs of the Home Relief program, the Legislature was precluded from accomplishing "this result by arbitrarily denying one class of persons access to public funds available to all others”, and therefore, ruled that the amendment had reduced "the home relief caseload but not in a rational manner” (at 462).
More recent case law has also examined legislative efforts to reduce costs of Home Relief from the perspective of the provision of the New York Constitution mandating public assistance to the needy, as well as the Equal Protection Clause. In Lovelace v Gross (80 NY2d 419 [1992]), the plaintiffs, who consisted of a putative class of infant children residing with their grandparents, challenged the so-called " 'grandparent-deeming’ rule” (at 422) of the Social Services Law. In essence, the statute required that a portion of the grandparents’ income be "deemed” (supra) available to the infants in determining their eligibility for Home Relief payments. However, the Court of Appeals ruled that this provision did not violate New York Constitution, article XVII, § 1 because such rule came within the discretion of the Legislature to define the term "needy” (at 424). (Cf., Minino v Perales, 79 NY2d 883 [1992].) The facts were distinguished from Tucker v Toia (supra) which involved a legislative attempt to place an additional burden upon minors already classified as needy under State law. The Court further determined that there may well be economies associated with a single, three generational household, and therefore, the *278 "grandparent-deeming rule” was not unreasonable. Accordingly, under "the rational basis test”, rather than a " 'middle level’ scrutiny” (Lovelace v Gross, at 427), the law had a rational relationship to a legitimate State interest and was not violative of the Equal Protection Clause.
Based upon the foregoing analysis, this court has concluded that the durational residency requirement, which results in lower benefits to needy persons who have been residents for less than six months, contravenes the New York Constitution. Such individuals, as the petitioners in this case, meet the eligibility criteria for Home Relief. Otherwise stated,. this is not a situation where the Legislature has exercised its discretion to define the term "needy” for purposes of Home Relief. (Cf., Lovelace v Gross, supra.) Rather, the amendment, consisting of Social Services Law § 158 (f), creates two classes of persons for purposes of Home Relief benefits. The criteria utilized for this classification, namely, residency for a period of six months, is unrelated in any way to the determination of need, and therefore, violates New York Constitution, article XVII, § 1.
Admittedly, the statute does not deny all aid to individuals who have been residents for less than six months, as was the case, for example, in Tucker v Toia (supra). Nevertheless, the minimal financial circumstances of the petitioners is such that a reduction in Home Relief benefits, as compared to longer term residents, will have severe consequences. Furthermore, this disparate treatment violates the equal protection requirements of New York Constitution, article I, § 11. Although the State may certainly have a legitimate interest in reducing the public assistance case load, as well as reducing the cost of Home Relief program, the accomplishment of such result by arbitrarily denying full benefits to one class of persons, which are available to all other residents, cannot be justified as rationally related to a legitimate State interest. (Matter of Lee v Smith, supra.)
This court has further reached the opinion that the amendment to Social Services Law § 158 (f), pursuant to chapter 41 of the Laws of 1992, also violates provisions of the United States Constitution. In a series of decisions, the Supreme Court of the United States has frequently declared durational residency requirements unconstitutional as violative of our right to travel. Although this right is not expressly contained in the Constitution, it has been conceived as a basic elementary right emanating from the creation of the Federal *279 union. The right to travel is violated by laws deterring migration into a State, or alternatively, statutes which seek to penalize the exercise of the right to travel. (Attorney-General of N. Y. v Soto-Lopez, 476 US 898 [1986]; Memorial Hosp. v Maricopa County, 415 US 250 [1974]; Shapiro v Thompson, 394 US 618 [1969].) Thus, any legislation, such as the durational residency requirement for AFDC involved in Shapiro v Thompson (supra), the purpose for which is to deter movement into the State of poor families in need of assistance, is constitutionally impermissible.
As acknowledged by the Attorney-General, the amendment to Social Services Law, consisting of section 158 (f), was part of a cost-containment program, and designed to remove the financial incentive for needy individuals to move to this State. Although this has been characterized as an attempt to make the decision to move fiscally neutral, the actual purpose of the enactment was to penalize the exercise of the right to travel by creating a class of short-term residents, who would receive lower benefits than all others who also have met the same eligibility requirements for Home Relief.
A durational residency requirement necessarily creates two classes of citizens, and the Supreme Court in the above and other cases has relied upon the Equal Protection Clause of the United States Constitution to uphold challenges to such laws. The Attorney-General contends that the Court should apply a rational basis test in determining whether or not the statute violates the Equal Protection Clause, as distinguished, for example, from the strict scrutiny standard. However, in Shapiro v Thompson (supra), the Supreme Court explicitly held that if a statute creates a classification which "touches on the fundamental right of interstate movement, its constitutionality must be judged by the stricter standard of whether it promotes a compelling state interest” (at 638). In this connection, the Court has held that "the conservation of the taxpayers’ purse is simply not a sufficient state interest to sustain a durational residence requirement which, in effect, severely penalizes exercise of the right to freely migrate and settle in another State.” (See, Memorial Hosp. v Maricopa County, supra, at 263.) In any event, for reasons earlier discussed, the classification created by the addition of Social Services Law § 158 (f) does not bear a rational basis or relationship to a legitimate State interest for purposes of the Equal Protection Clause of the State Constitution.
This court’s determination that the durational residency *280 requirement contravenes the right to travel and equal protection, as guaranteed by the United States Constitution, is consistent with several relatively recent decisions in other jurisdictions. For instance, Green v Anderson (811 F Supp 516 [ED Cal 1993], affd 26 F3d 95 [9th Cir, Apr. 29, 1994]) involved an impermissible limit on the amount of AFDC benefits to the level of benefits a family would have received in the State of prior residence, during the first 12 months of residence in the State of California. Perhaps more analogous to the pending case were the facts involved in Mitchell v Steffen (487 NW2d 896 [Minn 1992], cert denied —US —, 127 L Ed 2d 93 [1994]). In this decision, the Minnesota Court of Appeals upheld a challenge to a 1991 amendment to a statute relating to general assistance and work readiness benefits. More specifically, this provision directed that an applicant, without minor children who had resided in the State for less than six months, would receive 60% of the amount available to longer term residents. Further, an applicant who had actually received benefits in the last State of residence was entitled to receive benefits equal to the lesser of the benefits actually received in the prior State or the maximum allowable under the Minnesota statute. It is significant that the court determined that the fact that the statute reduced rather than eliminated benefits did not change the conclusion that it was an unconstitutional penalty on the right to travel. Also, the court ruled, for the same reason, that a statute is unconstitutional if its purpose is to make receipt of public assistance benefits a neutral factor in a person’s decision to move into the State. Both of these arguments have been unsuccessfully advanced by the Attorney-General in the pending case.
Finally, in regard to the issue of constitutionality of the statute and procedures, this court has concluded that the failure to provide notice of reduced benefits to three of the petitioners did not constitute a violation of their due process rights. The initial approval of an application for public assistance, notwithstanding the fact that the grant represents a reduced amount as compared to other residents, should be distinguished from the reduction or termination of benefits after a receipt thereof for a period of time. (Cf., Goldberg v Kelly, 397 US 254 [1970].) Similarly, the pending cases do not involve the failure to apprise the applicants of the availability of certain public assistance grants. (Cf., Gonzalez v Blum, 127 Misc 2d 558 [1985], affd 96 AD2d 1091 [2d Dept 1983].) *281 Assuming that the three petitioners had been advised of the fact that their benefits would be somewhat reduced because of the short duration of their residency, there would have been no available administrative remedy to alter such a result. In any event, the Attorney-General has acknowledged that State policy requires applicants to be informed of the residency limitation at the time of requesting Home Relief benefits within the first six months of their residency, and approximately one year after the enactment of the law, the New York State Department of Social Services did issue an informational letter instructing the local Department of Social Services to provide such notice.
Based upon the foregoing, a declaratory judgment should be entered, determining Social Services Law § 158 (f) to be unconstitutional. Further, petitioners are entitled to a permanent injunction, including a directive that respondents take no further action to enforce the provisions of this section, and a restoration of benefits, representing the difference between amounts actually received and those benefits to which they would have been otherwise entitled, if they had been residents for a period longer than six months. However, the court has determined that petitioners’ further application for class action certification should be denied.
In order to qualify for class action certification, a petitioner must satisfy the five requirements contained in CPLR 901 (a), including a demonstration that "a class action is superior to other available methods for the fair and efficient adjudication of controversy.” (CPLR 901 [a] [5].) Class actions against governmental bodies and agencies are normally held not to satisfy this requirement of the statute, and as a general rule, class certification is therefore inappropriate in lawsuits against the State or any of its political subdivisions. (See, e.g., Matter of Jones v Berman, 37 NY2d 42 [1975]; Terry v Town of Huntington, 101 AD2d 833 [2d Dept 1984]; Oak Beach v Town of Babylon, 100 AD2d 930 [2d Dept 1984]; Suffolk Hous. Servs. v Town of Brookhaven, 69 AD2d 242 [2d Dept 1979]; Matter of Tavarez v Sipprell, 62 AD2d 631 [4th Dept 1978].) The reason for this rule, as articulated in these and other decisions, is simply the fact that the doctrine of stare decisis will presumably benefit and protect all petitioners in the purported class. Indeed, the Attorney-General has represented that the Department of Social Services would adhere to the doctrine of stare decisis in the present case. Furthermore, it should be empha *282 sized that the provisions of Social Services Law § 158 (f) will expire, by the terms of its enactment, on July 1, 1994.
In a supplemental affidavit, submitted by one of the attorneys for petitioners, reference is made to the fact that she had been contacted by other legal services offices throughout the State regarding named applicants who had been similarly adversely affected by the durational residency requirement. Specifically, these individuals had received public assistance, through the Home Relief program, in their respective Counties of Chemung, Nassau and Steuben. However, it would further appear from this affidavit that neither the Attorney-General nor the attorneys for these counties had any objection to their intervention in this proceeding, and in at least one instance, the county was willing to provide full HR benefits during the pendency of this litigation. Accordingly, this court would be agreeable to permitting these individuals the status of petitioner-intervenors upon the consent of all parties.
The supplemental affidavit was submitted, in part, to establish that there was a need for class certification in order to protect such individuals, and provide them with full HR benefits. Nevertheless, one of the other requirements for class certification is proof that "the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable”. (CPLR 901 [a] [1].) The parties are unable to demonstrate the number of persons who have been adversely affected by the durational residency requirement, for purposes of the Home Relief program. In fact, the Attorney-General has represented that the records of the New York State Department of Social Services, as well as the local Social Services Departments, are unable to provide the identity of persons who would come within such a purported class. Thus, for this reason, as well as the expiration of the statute on July 1, 1994, this court declines to grant such application.

. All parties have consented to the intervention, and accordingly, the court has granted the application.

. The durational residency requirement was implemented by regulation promulgated by the New York State Department of Social Services. (18 NYCRR 352.29 [i].)

. According to the memorandum, submitted by the Attorney-General, New York is only one of 21 States offering general assistance in addition to the AFDC programs, and only five States offer general assistance in an amount greater than the State of New York. It should be noted that an exemption to the durational residency requirement was extended to "any person entitled to federally funded refugee cash assistance under Title IV of the Immigration Nationality Act.” (Social Services Law § 158 [f].)

. The amount of benefits approved for the petitioner, George Aumick, as well as other petitioners, was actually less than otherwise entitled under Social Services Law § 158 (f) as enacted under chapter 41 of the Laws of 1992. However, the respondents have acknowledged errors in the calculation and have agreed to make reimbursement, and accordingly, this particular issue becomes moot.