OPINION OF THE COURT
Andrew V. Siracuse, J.
This combined CPLR article 78 proceeding and declaratory judgment action was commenced by petition, like a conventional article 78 proceeding. Petitioners recently moved to New York State from Florida and Puerto Rico respectively, and found themselves in straitened circumstances. They applied for Home Relief, the New York State program that provides public assistance to those ineligible under AFDC and other Federal programs.
*557 In 1995, however, New York’s Social Services Law had been amended to add the following paragraph to section 131-a (3): "(d) Notwithstanding any other provision of law, the payment for any person who applies for home relief or aid to dependent children benefits within six months of establishing residency in the state, shall for the first six months after establishing residency, be limited to the standard of payment, if any, that would apply to the applicant under the laws of the state, if any, in which he or she resided immediately prior to establishing residency in this state”. Neither Florida nor Puerto Rico has any State or Commonwealth program equivalent to Home Relief, and petitioners were thus deprived of any nonemergency public assistance whatsoever for six months.[1] They thereupon brought the present action, seeking a declaration that the amendment in question and its implementing regulations are unconstitutional and for retroactive restoration of Home Relief benefits. Pending determination of the constitutional issue petitioners have requested both a preliminary injunction and preliminary class certification to carry this action forward on behalf of all applicants for Home Relief similarly situated.
A similar durational requirement was enacted in 1992 and expired on its own terms on July 1, 1994. It differed from the present, permanent paragraph only in that it guaranteed minimum benefits during the six-month period of 80% of the New York standard. This provision was found unconstitutional by Justice Cornelius, also of this County’s Supreme Court (Matter of Aumick v Bane, 161 Misc 2d 271). Justice Cornelius’s decision is dated May 18, 1994, less than six weeks before the statute in question expired. For this reason, among others, he declined to certify the proceeding as a class action; and doubtless for the same reason the decision was never appealed.
At a preliminary conference held on September 23, 1996, this court granted a temporary restraining order enjoining enforcement of the amendment with respect to the two petitioners, but declined to grant other temporary relief or to entertain applications for intervention by other petitioners. The County respondents argued at the time that they were merely enforcing directives from the State, and that the true issue here was the constitutionality of Social Services Law *558 § 131-a (3) (d). The court agrees with this interpretation, and the parties have effectively consented to hearing this matter as a declaratory judgment action testing the statute. The procedural and substantive issues were thoroughly briefed by the Attorney-General’s office, representing the State of New York as the true respondent party in interest, and by petitioners’ attorneys. At oral argument, on October 15, this court informed counsel that it would address the constitutional issue directly, rendering preliminary injunctive relief moot and leaving only the question of possible attorneys’ fees to be resolved at a later session.
For reasons which will be examined in detail below, this court finds that class certification is proper as for all those who have applied for Home Relief benefits and been rejected on the basis of Social Services Law § 131-a (3) (d), and that this paragraph is unconstitutional on its face under both the New York and Federal Constitutions.
Jurisdiction and Venue
The State raises several procedural issues which must be dealt with at the outset. The petitioners commenced the proceeding as one under article 78, but arguably failed to commence this action as a special proceeding, although they allege a cause of action under CPLR article 30, for a declaratory judgment. The State has thus argued that (1) the action was improperly commenced as an article 78 proceeding, because it seeks declaratory relief; and (2) venue was improperly laid in Monroe County, rather than Ontario or. Seneca County.
The Attorney-General must certainly be aware that as an article 78 proceeding this action would be properly venued in Monroe County, because a proceeding against a body or officer may be brought anywhere within the judicial district where the acts complained of took place (CPLR 506 [b]). The Attorney-General must also know that courts are required to correct actions brought in the wrong form (CPLR 103 [c]), and that the Court of Appeals has instructed us to convert article 78 proceedings into declaratory judgment actions if constitutional questions are raised, as long as the proper parties are before us (Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184; see also, Matter of Laird v Town of Montezuma, 191 AD2d 986 [4th Dept]).
There can be no question that Kovarsky (supra) requires that an article 78 proceeding raising constitutional issues be converted into a declaratory judgment action. Had the petition *559 ers omitted, any cause of action, under CPLR article 30 the court would nonetheless hear it as a declaratory judgment action. The petitioners should not be prejudiced because they did in fact plead this cause. Any procedural differences between article 78 and special proceedings, therefore, have no significance for this case.
Once the action is converted into a declaratory judgment proceeding, the petitioners should not lose the benefit of CPLR 506 (b) and their choice of venue, which was proper at the commencement of the action. Moreover, their choice of venue is clearly the best for all counsel and parties. As respondents for both County Departments of Social Services have argued, their participation in the actions complained of was merely to implement and apply the directions of the State government. This issue here is the constitutionality of a statute, and litigation would be carried out by the Rochester Regional Office of the Attorney-General and the Rochester-based Public Interest Law Office regardless of whether venue were laid here or in one of the outlying counties.
The respondents’ defenses based on venue and form of action are dismissed. This court has jurisdiction to convert the article 78 proceeding into a special proceeding to determine the constitutionality of the statute and venue here is not improper.
Class Certification
There are five requirements for a class action, set out in CPLR 901 (a):
"1. the class is so numerous that joinder of all members * * * is impracticable;
"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
"4. the representative parties will fairly and adequately protect the interests of the class; and
"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.”
The main focus of the State’s opposition to class certification is the superiority issue. According to the State, class actions are rarely proper against governments because stare decisis will adequately protect the other potential class members. Only if there is a showing that the governmental body consistently re *560 fuses to comply with the decisions of other courts should a class be certified.
Although class certification is uncommon in actions against governments, it is not unheard of and it is not limited to those facts asserted by the State. The First Department case, McCain v Koch (117 AD2d 198), cited by the State, must be read in the light of later cases such as the following: "It is a fact that a judgment favorable to the plaintiff herein will bind the governmental body (HPD) with respect to all persons similarly situated by virtue of the doctrine of stare decisis and, that such a procedural course may be preferable in certain situations where governmental operations are involved. (See, Matter of Jones v Berman, 37 NY2d 42, 57.) However, in this case the members of the proposed class are, as is the named plaintiff, indigent elderly individuals for whom the commencement of individual actions to obtain the small monthly benefits that might result from this action would be 'oppressively burdensome’ (compare, Matter of Lamboy v Gross, 126 AD2d 265, 274). Contrary to the defendants’ view, this action is comparable to Matter of Lamboy v Gross (supra) in that typically, eligible elderly people who have not received any exemption or have not received their full exemption often must forego necessities to meet rent payments. Thus, their need for relief is as immediate as that of the plaintiff homeless families in Matter of Lamboy v Gross (supra). Even if a significant number of the members of the proposed class were to obtain free legal representation in connection with their claims, the multiplicity of lawsuits would give rise to the possibility of inconsistent rulings by various courts in the State. Proper class action certification would eliminate that possibility” (Tindell v Koch, 164 AD2d 689, 695 [1st Dept]; accord, Velazquez v State of New York, 226 AD2d 141 [1st Dept]; see also, Felder v Foster, 71 AD2d 71, 74 [4th Dept]).
The proposed class in the present case has all of the characteristics of the class certified in Tindell (supra); it consists of indigent individuals with little access to the court system, all of whom are in immediate need of relief. While the State may apply the decision of this or another court prospectively, no mechanism exists other than a class action to secure retroactive payment of Home Relief benefits for those individuals whose applications have already been denied. The court cannot ignore their needs or the needs of those whose applications, otherwise worthy, may yet be rejected under an unconstitutional statute.
*561 Furthermore, refusal to certify the class would simply invite additional parallel proceedings in other counties and other courts, wasting court resources and conceivably resulting in conflicting decisions until an eventual Court of Appeals ruling. This is an affront to basic principles of judicial economy. Class certification will both secure the rights of the people affected and bring the issue before the appellate courts in a coherent and expeditious manner.[2]
The State raises two further objections to class certification: that the number of class members is insufficiently large and that the class cannot be effectively managed. However, there has been no refutation of the Department of Social Services’ own estimate of 5,000 people affected — surely a large enough group — and the failure of the Department to monitor the effect of the statute cannot serve as a bar to the petitioners’ relief.[3]
In Aumick (supra) Justice Cornelius declined to certify a class on the grounds that the numerosity of the class had not been established and on the immediate expiration of the provision, as well as the general rule against class actions against governments and the difficulty of identifying the people affected (Matter of Aumick v Bane, supra, 161 Misc 2d, at 281-282). The first two of these considerations are not present here, and the last two are not controlling. The petitioners are certified to carry this action forward on behalf of all those who have applied for Home Relief and have been denied benefits under Social Services Law § 131-a (3) (d). Under CPLR 907 (2) the court orders the Department itself to develop a means for identifying and notifying those rejected under Social Services Law § 131-a (3) (d).
The Constitutional Issues: State Obligation to the Needy
Article XVII, § 1 of the New York State Constitution provides, in part: “The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine.”
The Court of Appeals has consistently interpreted this provision as one that forbids any classification of welfare recipients *562 by standards other than need itself. No case has retreated from the strong position taken by Judge Gabrielli, writing for a unanimous Court in Tucker v Toia (43 NY2d 1): "Although our Constitution provides the Legislature with discretion in determining the means by which this objective is to be effectuated, in determining the amount of aid, and in classifying recipients and defining the term 'needy’, it unequivocally prevents the Legislature from simply refusing to aid those whom it has classified as needy. Such a definite constitutional mandate cannot be ignored or easily evaded in either its letter or its spirit” (supra, at 8). Although "the statute [in Tucker (supra), which denied Home Relief to those under 21 not living with a parent or relative who had not brought support proceedings against them] is in furtherance of a valid State objective, for it is intended to prevent unnecessary welfare expenditures”, the Court found it unconstitutional; adopting the words of Matter of Barie v Lavine (40 NY2d 565), Judge Gabrielli added: "May the Legialature [sic] deny all aid to certain individuals who are admittedly needy, solely on the basis of criteria having nothing to do with need? Today, we hold that it may not” (Tucker v Toia, supra, 43 NY2d, at 9).
The State’s position cannot be justified in the light of these pronouncements. Neither in its papers nor at oral argument did the State address them; in fact, its papers state only that the statute "is just part of the legislative duty to set benefit levels”. No citation is given in support of this statement. None can be found.
Tucker v Toia (supra) dealt with a statute that deprived the needy petitioners of all aid. That is the case with the present petitioners, but it is not the case with all the other members of the class, who may be receiving reduced benefits. Any distinction between partial and total reduction of aid, however, is one without a difference. While upholding a provision that deemed a portion of the income of grandparents to be available to infants for determining Home Relief eligibility, the Court of Appeals distinguished Tucker v Toia because in the earlier case "the impermissible burden fell on minors already classified under State law as needy * * * What is before us now * * * is a challenge to the Legislature’s definition of 'needy’ ” (Lovelace v Gross, 80 NY2d 419, 426). The distinction drawn by the Court was between legislative classifications among those found to be needy, which is impermissible under the Constitution, and changes to the definition of need, which is generally a matter within the Legislature’s control. A statute which re *563 duces benefits for some of the needy is as much an unconstitutional classification as one that eliminates them altogether; in Matter of Lee v Smith (43 NY2d 453), the petitioners were not completely deprived of assistance, but the controlling statute was nonetheless found to be unconstitutional.
In reliance on these precedents Justice Cornelius found the 1992 statute unconstitutional even though it guaranteed some aid to new residents. The present statute, which grants reduced aid to some and no aid at all to others, also violates article XVII of the State Constitution.
The equal protection argument will be treated below, after • consideration of the right to travel.
The Constitutional Issues: Right to Travel
The right to travel is an implicit right under the United States Constitution, and enactments that penalize that right must be justifiable as furthering a compelling State interest (Shapiro v Thompson, 394 US 618, 638; see also, Nordlinger v Hahn, 505 US 1). Shapiro addressed a State statute that forbade AFDC payments to new residents for a period of one year. The Supreme Court found the statute unconstitutional, and its reasoning is directly applicable to the present action:
"[A]ppellants argue that even if it is impermissible for a State to attempt to deter the entry of all indigents, the challenged classification may be justified as a permissible state attempt to discourage those indigents who would enter the State solely to obtain larger benefits. We observe first that none of the statutes before us is tailored to serve that objective * * *
"More fundamentally, a State may no more try to fence out those indigents who seek higher welfare benefits than it may try to fence out indigents generally. Implicit in any such distinction is the notion that indigents who enter a State with the hope of securing higher welfare benefits are somehow less deserving than indigents who do not take this consideration into account. But we do not perceive why a mother who is seeking to make a new life for herself and her children should be regarded as less deserving because she considers, among others factors, the level of a State’s public assistance. Surely such a mother is no less deserving than a mother who moves into a particular State in order to take advantage of its better educational facilities * * *
"We recognize that a State has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt *564 to limit its expenditures, whether for public assistance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. It could not, for example, reduce expenditures for education by barring indigent children from its schools. Similarly, in the cases before us, appellants must do more than show that denying welfare benefits to new residents saves money. The saving of welfare costs cannot justify an otherwise invidious classification.
"In sum, neither deterrence of indigents from migrating to the State nor limitation of welfare benefits to those regarded as contributing to the State is a constitutionally permissible state objective” (Shapiro v Thompson, supra, 394 US, at 631-633).
The State clearly recognizes that Shapiro (supra) compels a finding that the present statute is unconstitutional, and attempts without success and with some disingenuity to distinguish it. The State’s initial argument is that the present statute provides only a temporary limitation on benefits, "while in Shapiro the statute denied AFDC benefits for an entire needy family for a full year, leaving them without a basic means of support”. (Mem of law, at 11.)
The court fails to see the force of this distinction. One can as well starve in 6 months as in 12. As the Supreme Court has stated, "even temporary deprivations of very important benefits and rights can operate to penalize migration” (Attorney Gen. of N. Y. v Soto-Lopez, 476 US 898, 907).
Next, the State claims that Shapiro (supra), which concerned Federally funded benefits, does not apply here, where only State benefits are involved. Yet the Supreme Court soundly rejected this reasoning in Memorial Hosp. v Maricopa County (415 US 250, 261), a case the State itself cites: "[A]ppellees seek to distinguish Shapiro as involving a partially federally funded program. Maricopa County has received federal funding for its public hospital but, more importantly, this Court has held that whether or not a welfare program is federally funded is irrelevant to the applicability of the Shapiro analysis."
It is true that the Memorial Hosp. Court noted that not all durational requirements are unconstitutional; but that same Court had no difficulty in finding statutes like the present one improper: "In Shapiro, the Court found denial of the basic 'necessities of life’ to be a penalty. Nonetheless, the Court has declined to strike down state statutes requiring one year of res *565 idence as a condition to lower tuition at state institutions of higher education” (Memorial Hosp. v Maricopa County, supra, 415 US, at 259). The present case, of course, involves the basic necessaries of life.
Next, while admitting that "the purpose of the legislation is to reduce the incentive for needy individuals to travel to New York” (mem of law, at 11), the State argues that all the same it does not impede travel.[4] No evidence has been provided that anyone has been deterred from travel, and the petitioners, by their presence in the State, were clearly not so deterred.
Again, the Supreme Court, in Memorial Hosp. (supra), has unequivocally rejected this reasoning: "It is true, as appellees argue, that there is no evidence in the record before us that anyone was actually deterred from traveling by the challenged restriction. But neither did the majority in Shapiro find any reason 'to dispute the "evidence that few welfare recipients have in fact been deterred [from moving] by residence requirements.” Indeed, none of the litigants had themselves been deterred.’ ” (Memorial Hosp. v Maricopa County, supra, 415 US, at 257-258 [citations omitted].)
In summary, the State claims that the limitation at issue is moderate and temporary, and has no significant detrimental effect. The court cannot accept this characterization. Instead, this case falls squarely in the mainstream of right-to-travel cases:
"[0]ur recent cases have dealt with state laws that, by classifying residents according to the time they established residence, resulted in the unequal distribution of rights and benefits among otherwise qualified bona fide residents * * *
"[T]he right to migrate protects residents of a State from being disadvantaged, or from being treated differently, simply because of the timing of their migration, from other similarly situated residents” (Attorney Gen. of N. Y. v Soto-Lopez, supra, 476 US, at 903, 904).
Although some new residents do receive aid — at the level of aid available in their prior State of residence — the right to travel is implicated whenever there is an "unequal distribution of rights and benefits” among residents of the State based on time of residency. The benefits given to new residents must be measured by the New York standards of need and local costs of living: "Defendants suggest that the measure is not a *566 penalty because the benefits provided are the same as those provided in the state of prior residence. But under the cases the relevant comparison is not between recent residents of the State of California and residents of other states. Were this the comparison, the result in Zobel would be inexplicable since no other state provided a bounty to its citizens and thus Alaska treated new residents better in this respect than residents of other states. Similarly, it was of no significance in Memorial Hosp. that the nonemergency care provided by Maricopa County may have been much superior to the medical care provided elsewhere. It is because the measure treats recent residents of California different than other California residents, and involves the basic necessities of life, that it places a penalty on migration. Moreover, the measure cannot fairly be said to provide the same payment as new residents could have received in the state of their prior residence since the cost of living, particularly housing, varies so substantially from state to state and generally is much higher in California than elsewhere” (Green v Anderson, 811 F Supp 516, 521, affd 26 F3d 95, vacated 513 US 557).
None of the distinctions urged by the State has any weight. As an infringement on the constitutional right to travel, unjustified by any compelling State interest, Social Services Law § 131-a (3) (d) is unconstitutional.
The Constitutional Issues: Equal Protection
Petitioners also challenge the statute on equal protection grounds, citing both Federal and State Constitutions. The interplay between equal protection on the one hand and the right to travel on the other is vague in the extreme; the Supreme Court has effectively consented to a conflation of the two: "Of course, regardless of the label we place on our analysis — right to migrate or equal protection — once we find a burden on the right to migrate the standard of review is the same. Laws which burden that right must be necessary to further a compelling state interest” (Attorney Gen. of N. Y. v Soto-Lopez, 476 US 898, 904-905, n 4, supra).
Equal protection cases turn on the rational relationship test, which the State discusses at length. Because the statute so clearly implicates the right to travel, however, there is no need for the court to apply this test. Similarly, the unconstitutionality of the statute is sufficiently clear under article XVII of the New York Constitution, and the court does not wish to lengthen an already extensive discussion with dicta.
*567 Conclusion
The petitioners’ challenge to the statute is proper and in proper form. Section 131-a (3) (d) of the Social Services Law is unconstitutional under both Federal and State Constitutions, and the State of New York and all State and local bodies empowered to determine applications for Home Relief are hereby permanently enjoined from enforcing it. Petitioners are certified as representatives of the class of all those similarly situated, and all are entitled to retroactive restoration of such Home Relief benefits as they would have received had the statute not been in force on the date of their application. The Department of Social Services is ordered to identify and notify those affected.
Further submissions, to be supplied in no more than 60 days, are invited on the propriety of an award under CPLR article 86, as well as the amount of attorneys’ fees that might be awarded.

. The State claims that the period was only four and one-half months more than for residents, because residents must wait 45 days from the date of application before they receive benefits; but this interpretation is belied by the implementing regulations, which begin the 45-day waiting period on the first day of the month following the six-month ineligibility period.

. If an appeal is taken on a constitutional issue alone it can bypass the Appellate Division and go directly to the Court of Appeals (CPLR 5601 [b] [2]).

. The implementing regulations do in fact refer to certain computer codes to identify denials based on Social Services Law § 131-a (3) (d).

. Actual intent to impede is irrelevant in any case (see, Dunn v Blumstein, 405 US 330, 339-340, n 10).