Matter of Stewart v Roberts (2021 NY Slip Op 01105)





Matter of Stewart v Roberts


2021 NY Slip Op 01105


Decided on February 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 18, 2021

530344

[*1]In the Matter of Tricia Stewart, Individually and as the Parent of Zas et al., and on Behalf of Similarly Situated Individuals, Respondent,
v
Samuel D. Roberts, as Commissioner of the Office of Temporary and Disability Assistance, Appellant, et al., Respondent.

Calendar Date: January 12, 2021

Before: Garry, P.J., Egan Jr., Lynch, Aarons and Pritzker, JJ.


Letitia James, Attorney General, Albany (Laura Etlinger of counsel), for appellant.
Empire Justice Center, Albany (Saima A. Akhtar of National Center for Law and Economic Justice, New York City, of counsel), for Tricia Stewart, respondent.



Lynch, J.
Appeal from a judgment of the Supreme Court (Collins, J.), entered September 27, 2019 in Albany County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted petitioner's motion for class certification and awarded retroactive class relief.
In our prior decision regarding this matter, we affirmed so much of Supreme Court's judgment as annulled a determination of the Office of Temporary and Disability Assistance (hereinafter OTDA) denying petitioner's application for public assistance (163 AD3d 89 [2018]). We agreed with Supreme Court that the methodology that OTDA was using to calculate whether an applicant had available resources from an automobile — which focused on the fair market value (hereinafter FMV) of the applicant's vehicle in excess of the statutory exemption (see Social Services Law § 131-n [e]) regardless of whether the applicant had any equity interest therein — was "irrational and unreasonable" (id. at 93). However, we reversed so much of Supreme Court's judgment as denied petitioner's motion for class action certification, finding the denial of her motion to be premature in the absence of further discovery on the prerequisite of numerosity (see CPLR 901 [a] [1]). In so doing, we rejected the argument by respondent Commissioner of OTDA (hereinafter respondent) that the governmental operations rule [FN1] rendered a class action inferior to other methods of adjudication "where, as here, a class action provide[d] the only mechanism available to secure retroactive benefits for potential class members" and "the members of [the] proposed class [were] indigent individuals who [sought] modest benefits and for whom commencement of individual actions would be burdensome" (id. at 94). Moreover, we were unpersuaded that the administrative burden involved in identifying class members would be too cumbersome, noting petitioner's assertion that "OTDA maintains a coding system that would permit a [tailored] search of its electronic database" (id. at 96). We therefore remitted the matter to Supreme Court for discovery on that issue and a redetermination of the motion upon completion thereof.
On remittal, the parties exchanged discovery and petitioner renewed her motion for class certification. In support of her motion, petitioner submitted certain evidence that came to light during the discovery process, including respondent's response to her notice to admit. Respondent admitted therein that, between July 20, 2015 (four months prior to the commencement of the proceeding/action) and October 9, 2018 (when respondent answered petitioner's notice to admit), at least 50 households in New York were denied public assistance because of a vehicle with an FMV over the applicable automobile resource limit — which effectively satisfies the numerosity component for a class action (see Globe Surgical Supply v GEICO Ins. Co., 59 AD3d 129, 138 [2008]). Respondent opposed the motion, submitting an affidavit [*2]from the director of OTDA's Temporary Assistance and Home Energy Assistance programs, who opined that managing a class action would be unduly burdensome because, contrary to petitioner's prior representation upon which this Court previously relied (163 AD3d at 96), OTDA's computer database does not allow a tailored search to identify putative class members and OTDA would be required to manually review over 10,000 case files to do so. Finding that the requirements set forth in CPLR 901 (a) had been demonstrated and that the manual review process would be "manageable," Supreme Court granted petitioner's motion and granted class certification. After permitting both parties to submit draft proposed judgments, Supreme Court issued a class action judgment that, among other things, defined the class and set forth detailed provisions for determining how putative class members would be identified and provided with class relief (see CPLR 905). Respondent appeals.[FN2]
We agree with Supreme Court that class certification is appropriate in this case. Respondent does not challenge Supreme Court's finding that the prerequisites of numerosity, commonality, typicality and adequacy of representation have been established (163 AD3d at 94). Instead, respondent argues that a class action is not a superior method by which to adjudicate the matter (see CPLR 901 [a] [5]). Although respondent continues to argue otherwise, we have already determined that the governmental operations rule does not bar this class action (163 AD3d at 94), and respondent has proffered no new evidence that would change the analysis or compel a different result (see O'Buckley v County of Chemung, 163 AD3d 1129, 1130 [2018]; Seittelman v Sabol, 217 AD2d 523, 526 [1995], mod 91 NY2d 618 [1998]; Tindell v Koch, 164 AD2d 689, 695 [1991]; Matter of Brown v Wing, 170 Misc 2d 554, 560 [Sup Ct, Monroe County 1996], affd for reasons stated below 241 AD2d 956 [1997]).
As recently reiterated by the Court of Appeals, "New York's statutory class certification provisions are to be liberally construed" (Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 183 [2019] [internal quotation marks and citations omitted]) and "[c]laims of uniform systemwide violations are particularly appropriate" for class relief (id. at 184; see Hurrell-Harring v State of New York, 81 AD3d 69, 72 [2011]). Considerations of judicial economy, as well as the burden that would be placed upon these putative class members — consisting of "indigent individuals who seek modest benefits" (163 AD3d at 95) — if they were required to litigate their rights on an individual basis, weigh heavily in favor of class certification (see CPLR 902 [2]; Tindell v Koch, 164 AD2d at 695; Pruitt v Rockefeller Ctr. Props., 167 AD2d 14, 23-24 [1991]; Weinberg v Hertz Corp., 116 AD2d 1, 4-5 [1986], affd 69 NY2d 979 [1987]). In these circumstances, we discern no compelling reason to depart from Supreme Court's finding that "a class action is superior to [*3]other available methods for the fair and efficient adjudication of the controversy" (CPLR 901 [a] [5]; see CPLR 902).[FN3]
We are, however, persuaded by respondent's argument that the process set forth in the judgment to identify putative class members — which, as borne out during the discovery process, would require OTDA to engage in an up-front manual review of over 10,000 case files — places a significant burden on OTDA (see Matter of Martin v Lavine, 39 NY2d 72, 75 [1976]). On remittal, respondent proposed incorporating into any issued class action judgment an "opt-in" procedure whereby putative class members would self-identify. The 10,000-plus case files include all cases denied during a defined period for having excess resources (see 163 AD3d at 96). It is fair to say that, in many of these cases, the excess resource threshold was not based on the FMV of an automobile. In such cases, a manual review would come up empty, wasting valuable administrative resources. Respondent's opt-in methodology approaches the member identification process from a different angle. Respondent has confirmed that it can readily identify the 10,000-plus case files through its computer database. Under the proposed opt-in method, a notice would be sent to each member of this category advising that the recipient may be entitled to a corrective payment for a wrongful denial of benefits as defined in this case based on the agency's incorrect valuation of an automobile. The notice recipients could, in turn, request an interview to determine whether they qualified for a corrective payment.
Although petitioner maintains that this approach places an undue burden on the recipient to initiate a review, the record suggests otherwise. Case in point is the notice of decision issued to petitioner on May 22, 2015, which explained that her request for public assistance was not approved because her resources exceeded the permitted limit. Notably, the notice provided a detailed calculation as to how OTDA utilized the FMV of her automobile in calculating her resources, demonstrating that benefits were denied due to the valuation of her automobile. Coupling the explanation in the notice of decision with the proposed opt-in notice would reasonably alert the notice recipients of their eligibility to participate in the class. Correspondingly, the opt-in approach would prove more efficient by focusing agency review on case files where an interview was requested. In short, respondent's proposal mitigates the administrative burden, compels notice to potential class members and implements a reasoned process to obtain relief. In those instances where the opt-in notice is returned as undeliverable, OTDA should then be required to conduct a manual file review. In our view, the opt-in procedure is a more palatable solution than the procedure fashioned by Supreme Court.
We therefore modify the judgment to implement the opt-in procedure by striking all of paragraphs 6 and 9 and subdivisions[*4](a) and (b) (i)-(ii) of paragraph 7, replacing them with the following provisions: Within 60 days of this decision, OTDA shall provide each social services district with a list of potential class members, as that term is defined in paragraph 5 (a) of the judgment, which shall contain instructions about how to identify class members and calculate any corrective benefits owed. Within 45 days of receiving such list, the social services districts shall send a notice to each potential class member on the list using the procedure set forth in paragraphs 8 and 11 of the judgment. Within 15 days of this decision, petitioner's counsel shall provide respondent's counsel with suggested language for the notices, the content of which shall be in substantial conformance with the content requirements set forth in paragraph 8 (a) (i) and (ii) of the judgment. The notice shall also advise potential class members that they are entitled to an interview to determine whether they are putative class members and shall contain a designated contact number for the purpose of scheduling an interview. Any interview must be scheduled within 30 days of the request. For envelopes that are returned as undeliverable, the relevant social services district shall, within 30 days, undertake a manual review of those potential class members' case files to determine whether they are putative class members who may be entitled to corrective payments. For any putative class members identified in this manner, the social services district shall make a note in their case file and, if a new mailing address is identified through the procedure set forth in paragraph 11, shall send another notice advising such individuals of their status as putative class members and providing information as to how to schedule an interview. The remaining provisions of the judgment shall remain in full force and effect.[FN4]
To the extent that we have not addressed any of respondent's remaining contentions, we have considered them and find them to be unavailing.
Garry, P.J., Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is modified, on the law and the facts, without costs, by implementing the opt-in procedure proposed by respondent Commissioner of the Office of Temporary and Disability Assistance to the extent set forth herein, and, as so modified, affirmed.



Footnotes

Footnote 1: The governmental operations rule "provides that class actions are not a superior method for resolving multiple claims against administrative agencies because stare decisis will protect the potential class members by ensuring prospective application of a favorable judgment" (163 AD3d at 94).

Footnote 2: The judgment required OTDA, within 60 days of entry, to "issue a General Information System message . . . that advises social services districts that an automobile which is not an exempt resource as defined in [the Social Services Law] and in which the owner has minimal or no equity interest, is not an 'available' resource which would disqualify the applicant or recipient from the receipt of public assistance" (hereinafter the equity-interest policy). Within 30 days thereof, OTDA was required to issue guidance to its Office of Administrative Hearings regarding the policy change. During the pendency of this appeal, we granted petitioner's motion to vacate the automatic stay as to paragraphs 2, 3 and 4 of the judgment — the provisions requiring OTDA to issue guidance with respect to the equity-interest policy (see 2020 NY Slip Op 64685[U]). Respondent has advised us that OTDA issued the contemplated General Information System message to all social services districts on May 11, 2020 and issued guidance to its Office of Administrative Hearings one week later.

Footnote 3: As the other prerequisites to class certification are not in dispute, we need not address them. In any event, upon our review of the record, we agree with Supreme Court that the additional requirements have been established.

Footnote 4: We reject respondent's assertion that paragraph 7 (b) (viii) of the judgment is unduly burdensome. In that respect, respondent argues that Supreme Court abused its discretion by including in the certified class individuals who are not currently eligible for public assistance insofar as OTDA is statutorily precluded from making corrective payments to such individuals (see Social Services Law § 106-b). However, paragraph 7 (b) (viii) of the judgment does not require OTDA to make corrective payments in violation of the statute. It merely requires the social services districts to make a note in the case file of any identified putative class member who is not currently eligible for public assistance, which must record "the period of eligibility and the amount of any corrective payment due under th[e] [j]udgment for future reference in the event the class member becomes eligible for public assistance in the future." In our view, such a requirement — which may involve maintaining a list and cross-referencing it when one of these putative class members becomes eligible for public assistance and reapplies for benefits — is not overly burdensome.